## UNITED STATES v. SMOLER BROS., Inc.

### No. 47 C 1295.

United States District Court,
N. D. Illinois, E. D.

Nov. 18, 1949.

Otto Kerner, Jr., U. S. Atty., Northern Dist. of Illinois, Chicago, Ill., for plaintiff.

Jacobson, Nierman & Silbert, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

This is an action to recover the sum of $6,300 assessed as liquidated damages for violation of the Walsh-Healey Public Contracts Act 41 U.S.C.A. §§ 35–45. The trial Examiner of the Department of Labor found that defendant had knowingly employed 56 female minors, 16 and 17 years of age, on twelve of its Army and Navy contracts for an aggregate period of 630 days, contrary to the conditions of exemption granted by the Secretary of Labor to Section 1(d) of the Act. The Administrator of the Wage and Hour and Public Contracts Division found that a violation had occurred, which decision was affirmed by the Secretary of Labor.

The Government now moves for summary judgment. Defendant sets up the following defenses: (a) That it did not knowingly employ the girls in violation of the Act; (b) That, although the four Navy contracts specified that females under 18 could be employed only in conformity with the Secretary of Labor's Exemption order of November 11, 1942, the Army contracts merely prohibited the employment of children under 16; that liability may be adjudged only for breach of the contracts and not for violation of the Act, as such; that, since the Army contracts specified the age as 16, defendant has not violated the contracts.

Plaintiff's motion for summary judgment must be granted. Although the Trial Examiner, the Administrator and the Secretary of Labor all held defendant liable on slightly different theories, it is the opinion of the Court that the Secretary of Labor expresses the most valid solution. For that reason, his opinion is quoted extensively:

"In summary, each of the eight War Department contracts contains a provision prohibiting the employment of male or female persons under 16 years of age. Each provides that all representations and stipulations shall be subject to all exemptions issued by the Secretary of Labor. Five of the eight contracts contain additional language indicating some type of regulation with respect to females between the ages of 16 and 18. The remaining three contracts are wholly silent as to 16 and 17 year old girls.

\*     \*     \*     \*     \*     \*

"The Walsh-Healey Act declares a public policy of Congress that Government contractors conform to certain minimum labor standards. It provides that this policy is to be expressed in all contracts subject to the Act. It directs procurement agencies to give adequate notice of these standards by including in such contracts the representations and stipulations set forth in Section 1 of the Act. It is not simply a violation of the Act which exposes a contractor to liability; more precisely, it is a violation of the representations and stipulations which Section 1 directs shall be publicized in the contract. Thus, it is of no assistance to clear legal analysis to say that the obligation is exclusively statutory or, on the other hand, exclusively contractual in nature. The Act is sui generis and appears to present aspects of both bases of liability. The obligation stems from the statute, but in the absence of a Government contract in which representations and stipulations are ordered to be expressed, it never matures.

"The intention of Congress, as I gather it from the language of the Act, the organ-

ization of its parts and provisions and its legislative history, is that damages should be paid by employers who contract with reference to certain minimum labor standards set forth in the Act and who fail to comply with those standards. By requiring the enumerated representations and stipulations to 'be included' in the public contract, Congress took steps to make certain that contractors would be informed of the scope and character of the obligations imposed by the Act. Manifestly, it was intended that a contractor with the Federal Government should not be surprised, after performance, with a claim that he violated the Public Contracts Act, which he had no reason applied to him. Inasmuch as it is proper to assume that agencies of the government in letting contracts would comply with the statutory direction to include the stipulations set forth in Section 1, the requirement that they be so included is a reasonable means of making certain that the statutory terms and conditions attaching to Government contracts will be brought home to the intelligence of contractors. Congress was concerned lest insufficient publicity of the provisions of the Act be given, and contractors be unaware of the breadth of their statutory obligations.

"There is, of course, no question that the Navy Department contracts gave adequate notice of and publicity to the statutory labor standards. One of these contracts specifically prohibited the employment of girls under the age of 18 years; the others incorporated the stipulations of the Act by reference. Respondent's contention, however, relates to the War Department contracts. It is clear that these contracts, likewise, convey to respondent information which fulfills the Congressional purpose that every contractor be aware of its statutory responsibilities. In the formal sections of each of the War Department contracts, there is a portion devoted to provisions of the Walsh-Healey Act. Likewise the 'Schedule of Supplies' and the 'Informal Bid Form' which are parts of the 'incorporated contract' make frequent references to the Walsh-Healey Act. Respondent can have no conceivable

standing to complain that this is a case in which it was in ignorance of the relation of that Act to its contractual undertaking.

"The record in my judgment, demonstrates that respondent knew or should have known that the Walsh-Healey Act provisions applied to its contracts and that, under the child labor provisions of that Act, it might not employ 16 and 17 year old girls in the performance of its War Department contracts, notwithstanding the ambiguous or erroneous restatement of the Act's stipulations in some contracts. This evidence is to be found in the exhibits in the case and the testimony of respondent's responsible officers."

Furthermore, there is direct testimony by one of defendant's own officers that defendant did not rely upon the wording in the Army contracts which stated the minimum age to be 16 rather than 18 for females. As a matter of fact, defendant apparently did not realize that this erroneous provision was contained in the contracts until it had been charged with a violation.

■ Stated briefly, defendant is liable for violations because: (1) It knew, or should have known, that the contracts in question were subject to the provisions of the Walsh-Healey Act; (2) That, even though the Act assesses damages for breach of the contract provisions, a contractor will not be permitted to take advantage of the failure of a Governmental agency to include the provisions of the Act and Regulations, or the erroneous statement of such provisions. This conclusion is in conformity with that of the United States Supreme Court as stated in Federal Crop Insur. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 3, 92 L.Ed. 10: " * * * Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. * * *"

And further: "Accordingly, the Wheat Crop Insurance Regulations were binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regula-

tions or of the hardship resulting from innocent ignorance. The oft-quoted observation in Rock Island, Arkansas & Louisiana Railroad Co. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188, that 'Men must turn square corners when they deal with the Government,' does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury. The 'terms and conditions' defined by the Corporation, under authority of Congress, for creating liability on the part of the Government preclude recovery for the loss of the reseeded wheat no matter with what good reason the respondents thought they had obtained insurance from the Government. * * *"

■ Having, therefore, determined that a violation of the Act occurred, the Court now directs its attention to the problem of whether or not the female minors were "knowingly" employed by defendant. The Court finds and concludes that they were so "knowingly" employed, and is in complete accord with the statement of the Secretary of Labor on this point: "Respondent's records showed the correct ages of these girls at the time they were employed in violation of Section 1. This constitutes knowledge. That these records were maintained in the South Bend plant and were not available to the home office in Chicago does not alter respondent's liability for knowing employment. For child labor to be knowingly employed it is not necessary that there be present in the mind of the head of the enterprise actual knowledge as to the age of each child; nor is it necessary that there be readily and immediately available to him a record which will present to his mind the actual age of each child. It is sufficient if the true facts as to age are entered in the regular course of business in the company's records maintained for information of that kind."

For the above reasons, plaintiff's motion for summary judgment is granted, and judgment is accordingly entered in favor of plaintiff in the sum of $6,300, plus interest and costs.